IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| DOYLE B. DANIEL, JR. | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-1117 |
| | ) | Judge Terence F. McVerry/ |
| JAMES T. WYNDER, JR.; THE | ) | Magistrate Judge Amy Reynolds Hay |
| ATTORNEY GENERAL OF THE STATE | ) | |
| OF PENNSYLVANIA; THE DISTRICT | ) | |
| ATTORNEY OF THE COUNTY OF | ) | |
| WESTMORELAND, | ) | |
| | ) | |
| Respondents | ) | |


## REPORT AND RECOMMENDATION


## RECOMMENDATION

It is respectfully recommended that the habeas petition filed pursuant to 28 U.S.C. § 2254

be dismissed and that a certificate of appealability be denied.

## REPORT

Doyle B. Daniel, Jr., (Petitioner), a state prisoner, has filed this Section 2254 petition. By

this petition, he seeks to attack a conviction obtained on December 7, 2001. Because the

petition is time-barred, it should be dismissed.

Although Petitioner was charged with First Degree Murder in the shooting death of the

victim, the jury found Petitioner guilty of only voluntary manslaughter. Petitioner's direct appeal

was dismissed on February 24, 2003 for failure to file a brief. On March 28, 2003, Petitioner

filed a counseled PCRA petition. That petition was pending only until April 14, 2006, thirty days

after the Superior Court affirmed the denial of relief. Petitioner did not file his current habeas

petition until, at the earliest, July 7, 2007, more than two years after the Superior Court denied

relief. Accordingly, this petition is time barred.

In the alternative, Petitioner's three claims afford him no relief.

**Relevant Facts and Procedural History**

The trial court, in its opinion disposing of post sentence motions, described the facts of

the crime as follows:

> The Commonwealth presented evidence that the Defendant on the night of
> January 6, 2000 entered Sha-Keis bar in New Kensington, Westmoreland County
> and shot and killed Devon "Lo" Jones. Eyewitnesses to the shooting testified that
> the victim was seated at the bar in Sha-Keis speaking on the phone. The
> Defendant entered the bar, said something to the victim and began shooting. The
> witnesses heard anywhere from three to five shots. After firing the shots, the
> Defendant fled the scene.

State Court Record (hereinafter "SCR"), at Dkt. No. 104, p.3.[1]

The Petitioner took the stand in his own defense at trial and explained that the victim and

others came to his house and threatened him and Petitioner's girlfriend. The victim had done so

apparently because he believed that the Petitioner had stolen drugs and money from the victim's

apartment. Petitioner testified at trial that he bought the gun when he first heard of the victim

threatening his life. Petitioner testified that he was afraid and drinking heavily during the time

leading up to the shooting on January 6, 2000. Petitioner testified that he went to Sha-Keis bar

because the victim had requested him to do so and because Petitioner believed that the victim had

wanted to work things out. When Petitioner arrived at Sha-Keis, Petitioner testified that the

victim turned with something in his hand and was reaching toward his jacket. Petitioner

---

[1] Copies of the State Court record that Respondents attached to their answer do not contain a
copy of the State Trial Court's opinion disposing of Petitioner's post sentence motions. For ease of
access, the court has attached the opinion to this report and recommendation.

admitted that he fired, believing the victim was armed with a gun.

Petitioner's trial counsel, Timothy Dawson, also offered the expert testimony of Dr. Bernstein, a clinical and forensic psychiatrist. Dr. Berstein testified that Petitioner suffered from alcohol abuse and probably alcohol dependence, major depression disorder of the nature requiring treatment with medications or psychotherapy, and post traumatic stress disorder due to the initial events between Petitioner and the victim. On the night of the incident, Dr. Bernstein testified that Petitioner was completely convinced that the victim was planning to kill him and that the Petitioner was in fear for his life when the victim turned towards him.

This evidence was in support of Petitioner's diminished capacity defense. See SCR at Dkt. No. 50 ("NOTICE OF A CLAIM OF MENTAL INFIRMITY").

Although charged with first degree murder, and facing a life sentence, the jury returned a verdict of voluntary manslaughter.

At trial and sentencing and post-sentencing motions, Petitioner was represented by Timothy Paul Dawson. After post sentence motions were denied, the trial court appointed James H. Robinson on August 21, 2002 to represent Petitioner. Attorney Robinson represented Petitioner on direct appeal. However, the direct appeal was dismissed due to counsel's failure to file a brief. A PCRA petition was then prepared by Attorney Robinson and filed in the PCRA court. Initially, in the PCRA proceedings, Petitioner was again represented by Attorney James Robinson, (SCR at Dkt. No. 110) who continued to represent Petitioner throughout the PCRA proceedings, including at the PCRA hearing. After the PCRA court denied relief, Attorney Robinson filed a motion to withdraw, SCR at Dkt. No. 127, filed on January 9, 2004, which was granted and Attorney Allen Roth was appointed to represent Petitioner on the PCRA appeal to

the Superior Court. However, shortly thereafter, in March 2004, Attorney Roth filed a motion to

withdraw, SCR at Dkt. No. 133, which was granted and Attorney Harry F. Smail, Jr. was

appointed to represent Petitioner on the PCRA appeal to the Superior Court. SCR at Dkt. No.

136.

In the counseled PCRA petition filed by Attorney Robinson, the following two issues

were raised.

> 10. Defendant avers that he experienced ineffective assistance of counsel . . . .
> 11. Specifically, Defendant avers that his speedy trial rights were violated by the
> amount of time that lapsed between the time of the original complaint and the
> time of his jury trial.
> 12. Defendant contends that he suffers from Post-Traumatic stress disorder. No
> pre-trial activity by Defense Counsel reveals whether or not this is in fact true. If
> true, the disorder would have been relevant and material to Defendants [sic] state
> of mind and self defense issue. Also, it is a factor to present to the jury and to be
> contained in the jury instructions. See <u>Commonwealth v. Pitts</u>, 740 A.2d 726 ([Pa.
> Super.] 1999).

SCR at Dkt. No. 110.

The PCRA court denied relief. Dkt. [13-4] at 9 to 14. The sole issue raised on appeal to

the Superior Court was that trial counsel rendered ineffective assistance of counsel for failing to

mount an insanity defense based on Petitioner's post traumatic stress syndrome. Dkt. [13-3] at

15 and at 30 to 31. The Superior Court denied relief on March 15, 2005. Dkt. [13-3] at 30 to

33. No petition for allowance of appeal was filed by Petitioner.

Petitioner raises the following issues in his Section 2254 habeas petition:

> GROUND ONE: Ineffective Assistance of Appellant [sic] Attorney Harry F.
> Smail, Jr. . . . Appellant [sic] Attorney Harry F. Smail, Jr., failed to raised [sic]
> the ineffectiveness of prior PCRA Counsel James H. Robinson , Jr. On February
> 24, 2003 the Pennsylvania Superior Court dismissed my appeal for PCRA
> Counsel James H. Robinson, Jr.['s] failure to file a brief.

4

. . . .

GROUND TWO: All prior counsel were constitutionally ineffective for failing to pursue my issues. . . .  The issue which deals with the make-up of the jury panel was available at the time of post sentence motions, my initial appeal of sentence and PCRA petition but not raised at any of those times and thus waived due to all prior counsel[s'] failure.

. . . .

GROUND THREE: All prior counsel were constitutional[ly] ineffective for failing to call witnesses for my defense. . . .  Witness Torrey Jones was available as well as a number of other witnesses for my defense, but all prior counsel refused to call them.

Dkt. [4] at 5 to 8.  The Respondents filed an answer, Dkt. [13], along with exhibits as well as the original state court record.  In that answer, the Respondents raised, inter alia, the defense of AEDPA's statute of limitations.  Petitioner filed a traverse.  Dkt. [14].

**2) Applicable Legal Standards**

**A.  AEDPA applies**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996.  Because Petitioner's habeas petition was filed after the effective date of AEDPA, AEDPA is applicable to this case.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000) ("Since Werts filed his habeas petition on March 18, 1997, after the effective date of the AEDPA, we are required to apply the amended standards set forth in the AEDPA to his claim for federal habeas corpus relief.") (footnote omitted).

Prior to considering the merits of the habeas petition, a federal court must be satisfied that the procedural requirements for the consideration of a habeas petition have been satisfied.

Although exhaustion of state remedies is generally required before a federal court can grant

relief, exhaustion is not required if the habeas court denies relief.  28 U.S.C. § 2254(b)(2).  In

light of the recommended disposition, the court will not further address the issue of exhaustion.

### AEDPA's Statute of Limitations

Generally AEDPA requires that state prisoners file their federal habeas petition within

one year of any of four enumerated events:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a State court.
> The limitation period shall run from the latest of--
>   (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review;
>   (B) the date on which the impediment to filing an application created by State
> action in violation of the Constitution or laws of the United States is removed, if
> the applicant was prevented from filing by such State action;
>   (C) the date on which the constitutional right asserted was initially recognized by
> the Supreme Court, if the right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collateral review;  or
>   (D) the date on which the factual predicate of the claim or claims presented
> could have been discovered through the exercise of due diligence.
>  (2) The time during which a properly filed application for State post- conviction
> or other collateral review with respect to the pertinent judgment or claim is
> pending shall not be counted toward any period of limitation under this
> subsection.

28 U.S.C. § 2244(d).

Although a habeas respondent has the burden of affirmatively pleading AEDPA's statute

of limitations, Hill v. Braxton, 277 F.3d 701, 705 (4th Cir. 2002), it is appropriate, where, as here,

the habeas petitioner has been put on notice of a statute of limitations issue, to place some burden

on the habeas petitioner to show why some date other than the date of the conviction becoming

final should be used to calculate the running of the statute of limitations. See, e.g., Smith v.

Duncan, 297 F.3d 809, 814 (9th Cir. 2002) ("once a petitioner is given adequate notice and

opportunity to respond to allegations that his petition is subject to dismissal pursuant to

AEDPA's statute of limitations, petitioner has the burden of providing an adequate response"),

*abrogation on other grounds recognized in*, Moreno v. Harrison, 245 Fed.Appx. 606 (9th Cir.

2007); Jackson v. Secretary for Dept. of Corrections, 292 F.3d 1347, 1349 (11th Cir. 2002);

Robinson v. Johnson, 313 F.3d 128, 134-135 (3d Cir. 2002) ("The purpose of requiring the

defendant to plead available affirmative defenses in his answer is to avoid surprise and undue

prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the

affirmative defense should not succeed.").

It is appropriate to place at least some burden of pleading and production on a habeas

petitioner to show that the date for the running of the AEDPA limitations period should start

from either the date a State created impediment was removed (28 U.S.C. § 2244(d)(1)(B)) or

start from the date on which a factual predicate could first have been discovered (28 U.S.C. §

2244(d)(1)(D)).  See  Jackson v. Secretary for Dept. of Corrections, 292 F.3d at 1349 ("Because

Jackson did not assert that a government-created impediment to his filing existed, that he based

his claims on a right newly recognized by the Supreme Court, or that the facts supporting his

claims could not have been discovered through due diligence before the filing of this petition, the

statute of limitations must be measured from the remaining trigger, which is the date on which

his conviction became final.").   Thus, once a habeas petitioner has been put on notice of the

affirmative defense of AEDPA's statute of limitations, the petitioner bears the burden of

producing some evidence and persuading the court as to why the date for the start of AEDPA's

limitations period is other than the date the conviction became final or producing some evidence

and persuading the court as to why the statute of limitations has not run.

In addition, to the extent that Petitioner seeks to equitably toll AEDPA's statute of limitations, he bears a heavy burden. Equitable tolling can apply to AEDPA's statute of limitations. <u>Miller v. New Jersey State Dept. of Corrections</u>, 145 F.3d 616 (3d Cir. 1998). However, the court cautioned in <u>Miller</u> about the limited nature of equitable tolling:

> equitable tolling is proper only when the "principles of equity would make [the] rigid application [of a limitation period] unfair." <u>Shendock</u>, 893 F.2d at 1462. Generally, this will occur when the petitioner has "in some extraordinary way ... been prevented from asserting his or her rights." <u>Oshiver</u>, 38 F.3d 1380. The petitioner must show that he or she "exercised reasonable diligence in investigating and bringing [the] claims." <u>New Castle County</u>, 111 F.3d at 1126. Mere excusable neglect is not sufficient. <u>See Irwin v. Department of Veterans Affairs</u>, 498 U.S. 89, 96 (1990); <u>New Castle County</u>, 111 F.3d at 1126.

<u>Id</u>. at 618-19. Put succinctly, a habeas petitioner seeking to invoke the doctrine of equitable tolling must establish "extraordinary circumstances." <u>Sandvik v. United States</u>, 177 F.3d 1269, 1271 (11th Cir. 1999)("Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."), *reh'g and suggestion for reh'g en banc denied*, 207 F3d 666 (11th Cir. 2000). In order "[t]o establish the extraordinary circumstances necessary to equitably toll the AEDPA's statute of limitations, a habeas petitioner must prove that the cause of his delay was both beyond his control and unavoidable even with diligence." <u>Simmons v. Yukins</u>, No. Civ. 01-CV-71287-DT, 2001 WL 739505, at *2 (E.D. Mich. May 9, 2001). <u>See also Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."). Moreover, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." <u>Warren v.</u>

Garvin, 219 F.3d 111, 113 (2d Cir. 2000)(quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)).  Lastly,  it is petitioner's burden to plead and prove entitlement to equitable tolling.  See, e.g., Polk v. Cain, No. Civ. A. 00-3026, 2001 WL 736755, *9 (E.D. La. June 23, 2001)("A person seeking the tolling of the statute of limitations period has the burden of showing circumstances exist that justify tolling.");  Balagula v. United States, 73 F.Supp.2d 287, 291 (E.D.N.Y. 1999)("The burden lays with the petitioner to establish the entitlement to equitable tolling.");  Turner v. Singletary, 46 F.Supp.2d 1238, 1243 (N.D. Fla. 1999)("The burden is upon the petitioner to show that equitable tolling is warranted.").

The Court of Appeals for the Second Circuit has explained the importance of AEDPA's statute of limitations.  Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000).  In Acosta, the Court of Appeals declared that

> The statute of limitation in Section 2244(d) "was Congress' primary vehicle for streamlining the habeas review process and lending finality to state convictions." *Walker v. Artuz*, 208 F.3d 357, 361 (2d Cir.2000); *cf. Schlup v. Delo*, 513 U.S. 298, 322 (1995) (stating that on collateral review, courts should "accommodate [ ] ... the systemic interests in finality ... and conservation of judicial resources"). The AEDPA statute of limitation promotes judicial efficiency and  conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time. Like the other procedural bars to habeas review of state court judgments, the statute of limitation implicates the interests of both the federal and state courts, as well as the interests of society[.]

Acosta v. Artuz, 221 F.3d at 123.  Accord Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002) ("The one-year limitations period ... promotes judicial efficiency and conservation of judicial resources safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments

within a reasonable time.")(internal citations omitted).

**C.** **Discussion**

The Respondents point out that Petitioner's instant petition is untimely because it was not filed within one year of his conviction becoming final. This court agrees.

Petitioner's conviction became final 30 days after the Superior Court dismissed the direct appeal for failure to file a brief, i.e., thirty days after February 24, 2003, or March 26, 2003, since no appeal was taken from that order of the Superior Court. See Nara v. Frank, 264 F.3d 310, 314 (3d Cir. 2001)("Nara pled guilty on June 20, 1984 and was sentenced on July 13, 1984. Nara did not file a direct appeal, so his conviction and sentence were 'final' on August 13, 1984, when the time during which he could have appealed (30 days) lapsed."), *abrogation on other grounds recognized in*, Brooks v. Walls, 301 F.3d 839, 841 (7th Cir. 2002); Commonwealth v. Wolf, 632 A.2d 864, 866 n.4 (Pa. 1993) ("We recognize that a conviction, while generally finalized through imposition of a judgment of sentence, is also, as a practical matter, not final until appeals have been exhausted or the time for appeal has expired."). However, on March 28, 2003, a counseled PCRA petition was filed on Petitioner's behalf. Hence, a mere one day of the AEDPA one year statute of limitations passed, i.e., from March 26, to March 27, given that the PCRA petition was filed on March 28, and as of that date, AEDPA's statute of limitations was tolled.

A properly filed PCRA petition that is filed and/or pending, including the time for taking appeals of any denial of PCRA relief, tolls the running of AEDPA's one year limitations period. See 22 U.S.C. § 2244(d)(2); Swartz v. Meyers, 204 F.3d 417, 420 (3d Cir. 2000) (AEDPA's one year limitation period continues to be tolled during the period of taking a timely appeal from the denial of post-conviction relief and during the appellate court's consideration of the appeal).

Hence, Petitioner's counseled PCRA petition, which was filed on March 28, 2003 tolled the running of AEDPA's statute of limitations until 30 days after March 15, 2005, i.e., the date upon which the Superior Court affirmed the denial of PCRA relief, which was April 14, 2005, because no allocatur petition was filed in the Pennsylvania Supreme Court. Mattis v. Klopotoski, Civ.A. 07-1837, 2008 WL 2909859, at * 3 (E.D.Pa., July 28, 2008)("That petition remained pending until December 8, 2006, when the time expired for Mattis to seek review in the Pennsylvania Supreme Court. See Pa. R.A.P. 1113(a) (allowing 30 days for the filing of an allocatur petition); Swartz v. Meyers, 204 F.3d 417, 421-22 (3d Cir.2000) (state collateral petition is pending through the time for seeking an appeal)."); Young v. Lawler, CIV.A. 07-4171, 2008 WL 1984059, at *4 (E.D.Pa. May 2, 2008) (the 30 day period for filing allocatur to Pennsylvania Supreme Court tolled the running of AEDPA's even if no allocatur petition was filed).

Hence, on April 15, 2005, AEDPA's statute of limitations began running again and continued to run until it ran out on or about April 14, 2006, 364 days later (given that Petitioner had already used one day of the limitations period on March 27, 2003). Pursuant to the prisoner mail box rule, Petitioner is not deemed to have filed the present habeas petition, until, at the earliest, July 7, 2007, the date whereon he signed the habeas petition. July 7, 2007 is more than one year and two months beyond April 14, 2006, the date whereon AEDPA's one year limitations period expired.

While it is true that Petitioner filed on or about April 15, 2005, his second PCRA petition, which he filed pro se, the PCRA court held this second PCRA petition to be time barred. SCR at Dkt No. 144 (order dated May 23, 2005 dismissing the second PCRA petition) and at Dkt. No.

142 (Notice of Intent to Dismiss the PCRA petition dated May 2, 2005, noting that the second PCRA petition was untimely). Because an untimely filed PCRA petition cannot constitute a "properly filed" motion for post collateral relief, such a petition cannot serve to statutorily toll AEDPA's statute of limitations. Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005)(if state finds the post conviction petition untimely filed, it is not "properly filed" for AEDPA's statutory tolling provision).

Petitioner does attempt to meet his burden to show why AEDPA's statute of limitations has not run by addressing the untimeliness of his petition as follows:

> Appellant [sic] Attorney Harry F. Smail, Jr., failed to file my appeal in the Pennsylvania Supreme Court. The Pennsylvania Supreme Court refused to accept my pro se application for appeal stating that I was still represented by Attorney Smail. Prison Guards at SCI-Retreat destroyed my prior petition under 28 U.S.C. § 2254 for a writ of habeas corpus. And I was never notified by the office of the Prothonotary regarding the time I had to file an appeal to the Supreme Court of Pennsylvania. Also I was never sent a document stating that I could file a habeas corpus. To my understanding Attorney Smail is still counsel of record. For approximately five years I have been confined to the Restricted Housing Unit (RHU) without effective assistance of counsel and without access to the RHU library according to my constitutional rights as a prisoner.

Dkt. [4] at 13. None of these various reasons, considered individually or collectively, carries Petitioner's burden to persuade the court that the AEDPA statute of limitations should have been tolled. He has not demonstrated, as is his burden, that he acted with diligence throughout the period he seeks to have tolled, which would be about 469 days or one year, three months and 13 days, which is the amount of time between April 14, 2006 (the date Petitioner's one year statute of limitations ran out) and July 7, 2007, (the date whereon Petitioner signed his habeas petition and is deemed to have filed it).

Petitioner knew, by letter dated April 7, 2005, that it was Attorney Smail's intent not to file an allocatur petition. Dkt. [13-4] at 15 to 16. Petitioner apparently learned of this early on, as he himself indicates that he tried to file an allocatur petition pro se but the Supreme Court allegedly refused to accept it and allegedly referred the pro se petition to Attorney Smail and this had to occur before May 10, 2005 given that Attorney Smail was granted leave to withdraw his appearance by the PCRA court and as of that date, Petitioner no longer was represented by counsel. See Dkt. [13-2] at 48 (court order entered 5/10/05). Petitioner does not say when he received notice from the Pennsylvania Supreme Court of the fact that the Court referred the pro se allocatur petition to Attorney Smail, and so Petitioner fails to demonstrate to this court that he is entitled to tolling for the entire 469 day period as is required.

Petitioner also offers that prison guards at SCI-Retreat allegedly destroyed his first Section 2254 petition. Petitioner does not say when this happened. Again, the absence of such vital information, simply fails to carry his burden to persuade the court that he is entitled to tolling of the AEDPA statute of limitations or to carry his burden to show that the AEDPA statute of limitations should have begun on a date different from the date his conviction became final. Even the destruction of Petitioner's first habeas petition would not justify tolling for 469 days.

Petitioner also offers that the Prothonotary failed to inform Petitioner regarding the time he had in which to file an appeal to the Supreme Court. There simply is no legal obligation for the Prothonotary to afford Petitioner such information. Petitioner's alleged ignorance of the time period is not a sufficient basis to demonstrate due diligence so as to merit tolling. See Allen v. Yukins, 366 F.3d 396, 403 (6th Cir. 2004) ("ignorance of the law alone is not sufficient to warrant

13

equitable tolling."); Felder v. Johnson, 204 F.3d 168, 172 n. 10 (5th Cir. 2000)("such a run-of-the-mill claim of ignorance of the law is insufficient to warrant equitable tolling"); Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999)("ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.").  Moreover, even if the Prothonotary failed to inform Petitioner of the amount of time he had in which to file his allocatur petition to the Pennsylvania Supreme Court (which is 30 days after the Superior Court's order disposing of the  appeal), the April 7, 2005 letter from Attorney Smail informed Petitioner that he had only until April 14, 2005 by which to do so.  Again, this "failure to inform" on the part of the Prothonotary, fails to convince the court that Petitioner acted with due diligence throughout the amount of time required in order for the AEDPA statute of limitations to be sufficiently tolled.

Petitioner also complains that he was never sent a document informing him that he could file a habeas petition.  There is no requirement that he receive such.  This is nothing other than a disguised claim of ignorance of the law and/or of the AEDPA statute of limitations and mere ignorance of the law is simply inadequate to merit tolling of the statute of limitations.  Allen v. Yukins;  Felder v. Johnson; Fisher v. Johnson.

Lastly, Petitioner complains that for the past five years (i.e., prior to July 2007), he was housed in the Restricted Housing unit and without access to the law library in the RHU.  Such however, may not be adequate under the law to qualify as "extraordinary circumstance" so as to justify tolling.  Villanueva v. United States, NO. 98 CIV 1883 HBJCF, 1999 WL 298629, at *1 (S.D.N.Y. May 12, 1999)("there is no authority for the petitioner's contention that the statute of limitations should be tolled because of the inadequacy of the prison's law library or because he was indigent and unlettered.").  Even if it were otherwise though, the court notes that during this

14

five year time period, roughly from July 2002 to July 2007, Petitioner was able to draft the current habeas petition, (and apparently another habeas petition, i.e., the one allegedly destroyed by SCI-Retreat guards) as well as file his pro se PCRA petition, in addition to filing multiple pro se motions/letters requesting the appointment of new counsel, remand from the Superior Court for the appointment of new counsel, etc, as well as filing charges with the Pennsylvania Disciplinary Board against his various attorneys. If Petitioner were able to accomplish all of this, including the filing of the instant habeas petition during this time, he utterly fails to carry his burden to explain why if he were able to accomplish all of this during the same five year time period, he could not have filed his habeas petition earlier. Cf. Neuendorf v. Graves, 110 F. Supp.2d 1144, 1153 (N.D.Iowa 2000) ("the petitioner's filing of a petition for habeas relief before the alleged impediment was lifted suggests that the state action did not prevent the petitioner from timely filing the action"). Accordingly, the AEDPA statute of limitations having run, and Petitioner having failed to carry his burden to show entitlement to tolling thereof or that the start date of the limitations period should be other than the date his conviction became final, the petition should be dismissed as time barred.

In the alternative, none of the three issues which Petitioner raises, merits relief.

Petitioner's first issue is that his PCRA appellate attorney, i.e., Harry F. Smail, Jr., was ineffective. Such a claim provides no ground for relief in a federal habeas proceeding.

It does not matter for the purposes of deciding this issue whether PCRA counsel was ineffective, although it is doubtful that he was. This is so because, even if we assumed PCRA counsel was ineffective, the ineffectiveness of PCRA counsel simply does not provide a ground for relief in federal habeas proceedings, as such ineffectiveness implicates no federal

constitutional right given that Petitioner had no federal constitutional right to counsel at that stage in the proceedings. <u>Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")(citations omitted). There is no substantive due process or equal protection right to counsel in state post conviction proceedings. <u>Jacobs v. McDaniel</u>, 139 F.3d 905 (Table); 1998 WL 78440, at *1 (9th Cir. 1998)("Jacobs' claim that he was denied due process because the state habeas court refused to appoint counsel at the evidentiary hearing fails for lack of a right to counsel in state collateral proceedings."); <u>Gibson v. Public Advocacy Dept.</u>, 35 F.3d 565 (Table), 1994 WL 462160, at *2 (6th Cir. 1994)("Similarly, neither the Due Process Clause of the Fourteenth Amendment nor the equal protection guarantee of 'meaningful access' to the courts requires the defendants to appoint counsel for Gibson [in state post conviction proceedings]. *See Murray v. Giarratano*, 492 U.S. 1, 7 (1989). Thus, it is beyond a doubt that Gibson has no federal constitutional right to counsel...."); <u>Pursell v. Horn</u>, 187 F.Supp.2d 260, 373 (W.D. Pa. 2002)(holding in a death penalty case that "the due process clause does not require counsel for state post-conviction proceedings, whether state law requires such counsel or not."). Given no federal constitutional right was implicated based upon the alleged ineffectiveness of PCRA counsel, there is no ground for federal habeas relief provided by such alleged ineffectiveness. <u>See</u>, <u>e.g.</u>, <u>Bishop v. Epps</u>, 265 Fed.Appx. 285, 289 -90 (5th Cir. 2008)("Section 2254 of Title 28 of the United States Code guarantees post-conviction habeas relief only on the basis that a petitioner's conviction or sentence violates the Constitution or laws of the United States. Although individual states, for independent reasons, may decide to create a right to counsel for post-conviction review, the

16

decision has no basis in the Constitution. . . . .  Because Bishop has no right to counsel in post-conviction proceedings, he can allege no unconstitutional denial of the effective assistance of post-conviction counsel."), <u>cert. denied</u>, 128 S.Ct. 2975 (2008); <u>Mitchell v. Watkins</u>, 252 Fed.Appx. 874, 877 (10th Cir. 2007) (Court denied Certificate of appealability where the District Court concluded that "Claim (7) failed to state a valid basis for federal habeas relief because neither the Constitution nor federal law provides for a right to counsel in state post-conviction proceedings" and the Circuit Court concluded that "no reasonable jurist 'could debate whether (or, for that matter, agree that)' any of these claims 'should have been resolved in a different manner or that [they] were adequate to deserve encouragement to proceed further.'"), <u>cert. denied</u>, 128 S.Ct. 2914 (2008); <u>Sulie v. Farley</u>, 41 F.3d 1511 (Table), 1994 WL 622247, at *2 (7th Cir. 1994)("Since there is no constitutional right to effective assistance of counsel in state post-conviction proceedings . . ., there is no federal habeas relief for ineffective assistance of state post-conviction counsel.");  <u>Chaney v. McCotter</u>, 5 F.3d 545 (Table), 1993 WL 345526, at 3 (10th Cir. 1993)("habeas relief not available based on ineffective assistance of attorney appointed for state court collateral post-conviction proceedings because no constitutional right to counsel attaches to such proceedings")(<u>citing</u>, <u>Williams v. Lockhart</u>, 849 F.2d 1134, 1139 (8th Cir. 1988)). Accordingly, this issue does not afford Petitioner a ground for relief.

Alternatively, this issue affords no relief because Congress, who created the right for state prisoners to come to federal court to obtain a writ of habeas corpus,[2] has affirmatively provided

---

[2]  <u>Ex parte Bollman</u>, 8 U.S. (4 Cranch) 75 (1807)(state prisoners have no federal habeas corpus right unless Congress creates one); <u>Ex parte Dorr</u>, 44 U.S. (3 How.) 103, 105 (1845)(the Court ruled that "neither this nor any other court of the United States, or judge thereof, can issue a [writ of] habeas corpus to bring up a prisoner, who is in custody under a sentence of execution of a state court, for any other purpose than to be used as a witness.")

that ineffectiveness of counsel at the post conviction stage of proceedings can provide no basis for relief.  28 U.S.C. § 2254 (i)("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

The second issue Petitioner brings is that "[a]ll prior counsel were constitutionally ineffective for failing to pursue my issues."  Dkt. [4] at 7.  Petitioner goes on to expound on this issue by noting that "[t]he issue which deals with the make-up of the jury panel was available at the time of post sentence motions, my initial appeal of sentence and PCRA petition, but not raised at any of those times and thus waived due to all prior counsel[s'] failure."  Id.  As Petitioner properly notes, the issue of jury panel make-up, i.e., allegedly the jury panel violated equal protection guarantees based on race, such issue was waived under state law, as it was never raised during the course of any proceedings.  Any attempt to raise such an issue now in the state courts would be barred because another PCRA petition would be time barred. Hence, the issue of the jury panel is procedurally defaulted.  See, e.g., Tome v. Stickman, 167 Fed.Appx. 320, 322 (3d Cir. 2006)(affirming the District Court where "The District Court ruled that Tome's federal ineffective assistance of trial counsel claim was never exhausted in the state appellate courts. Because such a claim could now be raised only in a second PCRA petition and such a petition would be barred by the PCRA's one-year statute of limitations, the District Court ruled that the claim was procedurally defaulted."); Frazier v. Wilson, NO. CIV.A.06-3141, 2008 WL 1848093, at *15 (E.D.Pa., April 24, 2008 )("Because Petitioner would be unable to present these claims to the state courts in a PCRA petition because it would be untimely, they are procedurally defaulted.").

Hence, the only way for this court to properly address this issue is via a claim of layered ineffectiveness of all of Petitioner's prior counsel. Notably, this is exactly how Petitioner brings this claim. Parsed out, the claim boils down to this: Petitioner's PCRA appellate counsel Smail was ineffective for failing to raise PCRA trial counsel's ineffectiveness for failing to raise in the PCRA petition the ineffectiveness of Petitioner's trial and/or pre trial counsels' failure[3] to challenge the jury make up. Merely to state the claim properly demonstrates that it suffers from the same fault as Ground One, i.e., claims of ineffective assistance of counsel during the PCRA proceedings affords Petitioner no basis for relief here. Accordingly, Ground Two fails to provide Petitioner relief.

The exact same analysis applies to Ground Three, wherein Petitioner claims that "[a]ll prior counsel were constitutional[ly] ineffective for failing to call a witness for my defense." Dkt. [4] at 8. Hence, Ground Three cannot afford Petitioner relief.

As none of the claims raised provides a ground for relief, the petition should be denied.

## C. Certificate of Appealability

Section 2253 of Title 28 U.S.C. generally governs appeals from district court orders regarding habeas petitions. Section 2253 essentially provides in relevant part that a certificate of appealability, which is a prerequisite for allowing an appeal to a Court of Appeals, should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (C)(2). Instantly, this court concluded, in part, that Petitioner's habeas

---

[3] Because it is irrelevant to the outcome of the present analysis, the Court simply ignores for present purposes any claims against direct appeal counsel for alleged ineffectiveness for failing to file a brief and including in that brief the jury panel issue, although a properly layered claim of ineffectiveness would seem to have to include such a claim.

petition was time barred and, in part, that the claims raised afforded no grounds for relief.

There is a difficulty in applying Section 2253(C)(2) when a District Court does not decide the case on the merits, i.e., declines to address questions of constitutional violations, but instead decides the case on a procedural ground without determining whether there has been a denial of a constitutional right.  See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000); Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir. 2000).

In resolving this difficulty, the Supreme Court in  Slack v. McDaniel, held that

[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. at 484.   Hence, the analysis as to whether a certificate of appealability should issue to review a procedural question, has "two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding." Id. at 473.  The test is conjunctive and both prongs must be met.  See Walker v. Government of the Virgin Islands, 230 F.3d at 90.

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether dismissal of the Petitioner's claims for failing to comply with AEDPA's statute of limitations and/or that the ineffectiveness of PCRA counsel provides no grounds for relief in federal habeas proceedings, was correct.   Accordingly, a certificate of appealability should be denied.

CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 22 September, 2008

cc:    The Honorable Terrence F. McVerry
       United States District Judge

       Doyle B. Daniel, Jr.
       EY-4039
       SCI Dallas
       1000 Follies Road
       Dallas, PA 18612

       All Counsel of Record via CM-ECF